No. _____

_____

**IN THE**
**SECOND DISTRICT COURT OF APPEALS OF TEXAS**
**AT FORT WORTH**

FILED IN
2nd COURT OF APPEALS
FORT WORTH, TEXAS
4/20/2016 11:31:42 AM
DEBRA SPISAK
Clerk

_____

*In re MIDWESTERN CATTLE MARKETING, LLC,*

**RELATOR,**

_____

**FROM THE**
**271ST JUDICIAL DISTRICT COURT**
**OF JACK COUNTY, TEXAS**
**THE HONORABLE JOHN FOSTEL PRESIDING**

_____

**APPENDIX TO**
**PETITION FOR WRIT OF MANDAMUS**

_____

Christopher B. Trowbridge
Texas Bar No. 24008182
Beverly A. Whitley
Texas Bar No. 21374500
R. Heath Cheek
Texas Bar No. 24053141
Gregory D. Kelminson
Texas Bar No. 24070045

**BELL NUNNALLY & MARTIN LLP**
3232 McKinney Avenue, Suite 1400
Dallas, Texas  75204-2429
Telephone:  (214) 740-1400
Telecopy:  (214) 740-1499

**ATTORNEYS FOR RELATOR**
**MIDWESTERN CATTLE**
**MARKETING, LLC**

# APPENDIX

A.   Order Denying Plaintiff's Motion to Strike Petition in Intervention, and Alternative Motion to Sever (signed March 21, 2016).......................R080

B.   Plaintiff's Original Petition (filed July 6, 2015)......................................R002

C.   First Amended Petition in Intervention (filed February 26, 2016) .........R040

D.   Texas Rule of Civil Procedure 60

E.   Texas Rule of Evidence 404

2628810_1.DOCX

# Appendix A

## CAUSE NO. 15-07-061

| | | |
|---|---|---|
| MIDWESTERN CATTLE MARKETING, LLC | § § § | IN THE DISTRICT COURT |
| Plaintiff | § § | |
| vs. | § § | |
| TONY E. LYON d/b/a LYON FARMS, OWEN LYON and MONNA LYON | § § § | |
| Defendant | § § | JACK COUNTY, TEXAS |
| and | § § | |
| NORTHWEST CATTLE FEEDERS, L.L.C. and RILEY LIVESTOCK, INC. | § § § | |
| Intervenors | § | 271ST JUDICIAL DISTRICT |

### ORDER DENYING PLAINTIFF'S MOTION TO STRIKE PETITION IN INTERVENTION, AND ALTERNATIVE MOTION TO SEVER

The Court heard Plaintiff's Motion to Strike Petition in Intervention, and Alternative Motion to Sever on March 4, 2016. After the hearing, the Court took the matter under further consideration. After review of the Motion, the Response, the evidence offered at the hearing, and the arguments of counsel, the Court concludes that the Motion should be denied.

Therefore, it is ordered that Plaintiff's Motion to Strike Petition in Intervention, and Alternative Motion to Sever is hereby DENIED.

**FILED**
10:45 A.M. _____ P.M.

MAR 21 2016

TRACIE PIPPIN DIST. CLERK
JACK COUNTY, TEXAS
BY_____ DEPUTY

_____
The Honorable Judge John H. Fostel
Judge Presiding

R080

# Appendix B



CAUSE NO. 15-07-061

| | | |
|---|---|---|
| MIDWESTERN CATTLE MARKETING, LLC, | § § § | IN THE DISTRICT COURT |
| Plaintiff, | § § | |
| v. | § § | |
| TONY E. LYON d/b/a LYON FARMS, individually, OWEN LYON, individually and MONNA LYON, individually, | § § § § § | 271st JUDICIAL DISTRICT |
| Defendants. | § § | |
| | § | JACK COUNTY, TEXAS |

### PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff Midwestern Cattle Marketing, LLC ("MWC") complains of Defendants Tony E. Lyon d/b/a Lyon Farms ("Tony Lyon"), individually, Owen Lyon ("Owen Lyon"), individually, and Monna Lyon, individually ("Monna Lyon") (together "Defendants") and respectfully shows the Court the following:

### I.
### DISCOVERY CONTROL PLAN & MONETARY RELIEF

1. Discovery is intended to be conducted under Level 2, pursuant to Rule 190.3 of the Texas Rules of Civil Procedure. MWC reserves the right to request reassignment to a different discovery control plan level.

2. MWC seeks monetary relief greater than $1,000,000.00.



FILED
_____ A.M. 1:20 P.M.

JUL 6 2015

TRACIE PIPPIN DIST. CLERK
JACK COUNTY, TEXAS
BY _____ DEPUTY

PLAINTIFF'S ORIGINAL PETITION                                    PAGE 1

R002

## II.
## PARTIES

3.      Plaintiff MWC is a Nebraska limited liability company authorized to conduct business in Texas.

4.      Defendant Tony E. Lyon d/b/a Lyon Farm is an individual who resides in Perrin, Texas and may be served with process at his residence at 3100 Back Cemetery Road, Perrin, TX 76486 or wherever he may be found.

5.      Defendant Owen Lyon is an individual who resides Perrin, Texas and may be served with process at his residence and/or business at 1890 Hardy Road, Perrin, TX 76486, or wherever he may be found.

6.      Defendant Monna Lyon is an individual who resides in Perrin, Texas and may be served with process at her residence and/or business at 1890 Hardy Road, Perrin, TX 76486, or wherever she may be found.

## III.
## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this controversy because the damages are within the Court's jurisdictional limits.

8.      Pursuant to Section 15.002 of the Texas Civil Practice and Remedies Code, venue is proper in Jack County, Texas because it is the county of Defendants' residences and/or businesses at the time the cause of action accrued. Venue is also proper because a substantial part of the events or omissions giving rise to the causes of action asserted herein occurred in Jack County, Texas. Further, venue is proper in Jack County, Texas pursuant to Section 15.005 of the Texas Civil Practice and Remedies Code.

**PLAINTIFF'S ORIGINAL PETITION**                                    **PAGE 2**

R003

## IV.
## FACTS

9. MWC was founded in 2008 by a team of cattlemen with nearly 100 years of combined experience in the cattle business. MWC is built on a foundation of solid relationships — some reaching back 25 years or more — that continue to be maintained with a high level of service and integrity. MWC offers personal service to every customer and provides superior quality that contributes to their bottom line.

10. In essence, MWC acts as cattle brokers or "order buyers." It makes cattle purchases simple, straightforward, and profitable for producers and buyers alike. As part of its business, MWC matches cattle producers with cattle buyers. Once matched, MWC pays for the cattle when the company picks up the cattle from the producer. MWC is then paid when the cattle are delivered to the seller. Accordingly, MWC makes its profit from the spread of the buy and sell.

11. In July 2011, MWC and its owner Jason O'Connell met Tony Lyon in a sale barn in Graham, Texas. Shortly after this July 2011 meeting, MWC, impressed by the representations and mannerisms of Tony Lyon, decided to enter into a business arrangement with one another. As part of the agreement, Tony Lyon, through the assistance of Owen and Monna Lyon, would buy cattle for MWC from the producer and charge the purchase price to the company. MWC would then provide for the delivery of the cattle to the buyer. Through these years and transactions, Tony Lyon built trust and befriended Jason O'Connell.

12. Unfortunately, Tony Lyon was not worthy of such trust. Unbeknownst to MWC, prior to ever meeting Jason O'Connell, Tony Lyon had been sentenced to 37 months in prison and ordered to pay more than $6 million for perpetrating a fraudulent cattle-buying scheme. After his release from prison Tony Lyon again found himself in trouble. The U.S. Department of

**PLAINTIFF'S ORIGINAL PETITION**                                          **PAGE 3**

R004

Agriculture fined Tony Lyon $153,000 for, among other things: (1) failing to pay when due the full purchase price of livestock purchased in commerce; (2) failing to have and maintain sufficient funds on deposit and available in the account upon which checks for livestock purchase are drawn to pay them when presented.

13. However, without knowledge of Mr. Lyon's background, MWC continued to do business with and trust Tony Lyon. Indeed, around the beginning of 2014, to make their business dealing more efficient, MWC provided a MWC checkbook and signature stamp to Tony Lyon so he could sign checks on MWC's behalf.

14. This act of trust was apparently too much for Mr. Lyon, he was unable to restrain himself, and the defrauding of MWC began. Tony Lyon informed MWC that he met a "big money" buyer named John George, owner of George Cattle Company in Fort Worth, who wanted to get into cattle through a "feeding club". A feeding club is where investors pool money in the cattle market to buy, hold, and flip cattle for profit.

15. MWC, relying on Tony Lyon's representations to be true, set up repeated transactions with George Cattle Company as the buyer. Under the agreement: (a) Tony Lyon would write a check from MWC to either Owen Lyon or Lyon Farms, the d/b/a of Owen and Tony Lyon; (b) Tony Lyon would then send MWC a hand-written invoice by fax that detailed the number of cattle, the weight, etc., and the total amount due for the cattle; (c) Tony Lyon would then request that MWC invoice George Cattle Company; (d) MWC would fax the invoice to Tony Lyon; (e) Tony Lyon would tell MWC that the cattle should then be sent to George Cattle Company; (f) Tony would present the MWC invoice to George Cattle Company for payment; (g) George Cattle Company would then pay Lyon Farms and Lyon Farms would then pay MWC.

R005

16.     Despite the representations made by Defendants and unbeknownst to MWC, there was never John George or George Cattle Company. Instead, Tony Lyon was deviously created John George and George Cattle Company as a front for a fraudulent scheme to steal Plaintiff's cattle and money.

17.     In late June 2015, Tony Lyon's deplorable scheme was ultimately discovered when MWC's bank PointsWest Bank — contacted MWC to inform it of a suspicious transaction involving Tony Lyon and George Cattle Company. MWC deposit a check written on June 26, 2015, for the amount of $5,020,230.11 from Lyon Farms. The check was signed by Defendant Monna Lyon and was written from the account of "Owen or Monna D Lyon Cattle Account."

18.     PointsWest Bank called Lyon Farms' bank — Legend Bank — to verify if the check would clear Lyon Farms' account. Legend Bank informed PointsWest Bank that the check would not clear. The check was ultimately returned for insufficient funds on July 1, 2015. However, while the banks were determining whether the check would clear, Tony Lyon wrote the following checks from the MWC account without authorization:

- Check 1000892 $31,842.71 to K.L.

- Check 1000894 $1,772,959.76 to Defendant Owen Lyon

- Check 1000895 $1,644,308.00 to Defendant Owen Lyon

- Check 1001336 $344,400.00 to L.H.

All of these checks were paid by the bank.

19.     Once MWC was informed by PointsWest Bank that the check would not clear, MWC contacted Tony Lyon. Preying upon MWC's trust yet again, Tony Lyon said he would get the money from George Cattle Company. Tony Lyon then called back MWC and lied to MWC that he received the funds and would wire it in the morning.

R006

20. Despite this assurance, Tony Lyon did not wire the money as promised. Because the $5,020,230.11 wire never came through even though MWC fully performed, MWC unsuccessfully attempted to stop payment on its outstanding checks. As a result, MWC went from having over one million dollars in its bank account to being overdrawn by $1,644,440.36.

21. When MWC confronted Tony Lyon about why the check bounced, Tony Lyon admitted that indeed there was no money, no cattle and George Cattle Company never existed.

22. On information and belief, Owen Lyon and Monna Lyon acted as agents of Tony Lyon in the conduct described above.

23. Further, on information and belief, the money that was deposited in Defendants' accounts is in the process of being removed from the accounts and hidden by Defendants, thus, necessitating extraordinary relief.

24. All conditions precedent to Plaintiff's recovery have been fully performed, or have occurred or been waived.

## V.
## CAUSES OF ACTION

### COUNT ONE: COMMON LAW FRAUD

25. MWC hereby repeats and incorporates by reference each and every allegation contained in all paragraphs set forth above.

26. Defendants made multiple false representations to MWC regarding the $5,020,230.11 transaction with George Cattle Company. These representations included that (1) George Cattle Company existed and bought cattle, (2) Defendants had the money to pay MWC the amount owed, and (3) Defendants talked to George Cattle Company and would wire the $5,020,230.11. Those representations were material. Defendants knew the representations were false when they were made. Defendants made the representations with the intent that MWC rely

R007

and act on them. MWC justifiably relied on the representations in providing for the delivery of cattle and for writing other checks on the account with the belief the check for $5,020,230.11 would clear, and, as a result, suffered injury for which it seeks judgment.

## COUNT TWO: CIVIL THEFT

27.    MWC hereby repeats and incorporates by reference each and every allegation contained in all paragraphs set forth above.

28.    Defendants violated the Texas Civil Theft Liability Act and Sections 31.03 and 31.06 of the Texas Penal Code.   The actions of Defendants constitute civil theft because Defendants, knowingly and without effective consent, appropriated cattle or, alternatively, money belonging to MWC, for the purpose of using that property for their own benefit.

29.    Defendants obtained property by issuing a check when they did not have sufficient funds for the payment in full of the check.   On June 26, 2015, Defendants received notice that their account had insufficient funds, and the Defendants have failed to pay the holder in full within 10 days after receiving notice of that refusal.   MWC has been injured as a proximate result of Defendants' actions in an amount to be more fully demonstrated at trial.   In addition, because the harm caused by Defendants results from fraud, malice, and/or gross negligence, MWC is entitled to recovery of exemplary damages.   In addition, MWC is entitled to recover court costs and reasonable and necessary attorneys' fees.   See TEX. CIV. PRAC. & REM. CODE § 134.005(b).

R008

## COUNT THREE: NEGLIGENT MISREPRESENTATION

30.   MWC hereby repeats and incorporates by reference each and every allegation contained in all paragraphs set forth above.

31.   Defendants made multiple false representations to MWC regarding the $5,020,230.11 transaction with George Cattle Company. These representations included that: (1) George Cattle Company existed and bought cattle; (2) they had the money to pay MWC the amount owed; and (3) Defendants talked to George Cattle Company and would wire the $5,020,230.11. Those representations were made in the course of Defendants' business or in a transaction in which he had a pecuniary interest. Defendants did not exercise reasonable care or competence in communicating those representations. MWC justifiably relied on the representations in providing for the delivery of cattle and for writing other checks on the account with the belief the check for $5,020,230.11 would clear, and, as a result, suffered injury for which it seeks judgment.

## COUNT FOUR: FRAUDULENT INDUCEMENT

32.   MWC hereby repeats and incorporates by reference each and every allegation contained in all paragraphs set forth above.

33.   Defendants made multiple false representations to MWC regarding the $5,020,230.11 transaction with George Cattle Company. These representations included that: (1) George Cattle Company existed and bought cattle; (2) they had the money to pay MWC the amount owed; and (3) they talked to George Cattle Company and would wire the $5,020,230.11. Those representations were material. Defendants knew the representations were false when they were made. Defendants made the representations with the intent that MWC rely and act on them. MWC justifiably relied on the representations in entering into the agreement to provide

R009

delivery of cattle, and, as a result, suffered injury for which it seeks judgment.

## COUNT FIVE: CONVERSION

34.     MWC hereby repeats and incorporates by reference each and every allegation contained in all paragraphs set forth above.

35.     As detailed above, Defendants wrongfully possessed MWC's property. MWC entrusted Defendants to faithfully provide for the delivery of cattle and remit payment.

36.     MWC has incurred substantial damages as a direct and proximate result of Defendants' wrongful conduct and dominion of MWC's property.

## COUNT SIX: MONEY HAD AND RECEIVED

37.     MWC hereby repeats and incorporates by reference each and every allegation contained in all paragraphs set forth above.

38.     Defendants hold money that, in equity and good conscience, belongs to MWC. MWC are entitled to recover this money from Defendants, in an amount to be more fully demonstrated at trial.

## COUNT SEVEN: BREACH OF CONTRACT

39.     MWC hereby repeats and incorporates by reference each and every allegation contained in all paragraphs set forth above.

40.     MWC and Defendants are parties to an Agreement. Pursuant to the Agreement, Defendants assisted MWC in the purchase and selling of cattle. Defendants were to provide the appropriate money to MWC for the selling price of the cattle. Defendants breached this Agreement by failing to provide MWC with the money owed.

R010

41. MWC has been injured as a proximate result of Defendants' actions in an amount to be more fully demonstrated at trial. In addition, Plaintiffs are entitled to recovery of attorneys' fees. *See* TEX. CIV. PRAC. & REM. CODE § 38.001 (Vernon 2008).

## COUNT EIGHT—QUANTUM MERUIT

42. MWC hereby repeats and incorporates by reference each and every allegation contained in all paragraphs set forth above.

43. In the alternative and without waiving the foregoing, MWC, acting in the ordinary course of business, furnished Defendants with cattle, as detailed above. Defendants received and accepted the cattle and the corresponding money, unjustly enriching Defendants at the expense of MWC. Defendants knew, or should have known, that the cattle were provided in anticipation of compensation, and were not furnished gratuitously. After all offsets, payments and credits, the reasonable unpaid value of the cattle is at least $5,020,230.11. Despite demand, Defendants wrongfully refused to pay the reasonable value of the cattle for which sum MWC sues.

44. MWC has been damaged in an amount in excess of the jurisdictional limits of the Court and is entitled to recover.

## COUNT NINE: CONSPIRACY

45. MWC hereby repeats and incorporates by reference each and every allegation contained in all paragraphs set forth above.

46. Defendants acted pursuant to a common scheme designed to unlawfully possess MWC's cattle and/or to steal MWC's money.

47. Defendants committed overt acts in perpetuation of this common scheme by, among other things, making false representations to MWC and writing a bad check to MWC.

48. Defendants are jointly and severally liable for the tortious conduct alleged in Counts 1 through 5, *infra*.

**PLAINTIFF'S ORIGINAL PETITION**                                    **PAGE 10**

R011

49.    MWC has been injured as a proximate result of the conspiracy between Defendants in an amount to be more fully demonstrated at trial.  In addition, because the harm caused by Defendants results from fraud, malice, and/or gross negligence, MWC is entitled to recovery of exemplary damages.

## COUNT TEN:  AIDING AND ABETTING

50.    MWC hereby repeats and incorporates by reference each and every allegation contained in all paragraphs set forth above.

51.    Tony Lyon owed a fiduciary duty to MWC.  Defendants Monna and Owen Lyon acted with knowledge that Tony Lyon's conduct alleged *infra,* was a breach of his fiduciary duty duty, and Defendants Monna and Owen Lyon provided substantial assistance and encouragement to Tony Lyon in carrying out these tortious acts.  Defendants Monna and Owen Lyon B17 is therefore liable for aiding and abetting the tortious acts alleged in Counts 1 through 5, *infra.*

52.    MWC has been injured as a proximate result of Defendants Monna and Owen Lyon actions in an amount to be more fully demonstrated at trial.  In addition, because the harm caused by Defendants Monna and Owen Lyon result from fraud, malice, and/or gross negligence, MWC is entitled to recovery of exemplary damages.

## COUNT ELEVEN:  ATTORNEY'S FEES

53.    Each of the foregoing paragraphs are incorporated and reasserted herein by reference.

54.    MWC previously presented Defendants with a written demand for its claims. Despite that demand, Defendants failed and refused to pay the balance due.  As a result, MWC was required to retain the law firm of Bell, Nunnally & Martin LLP to enforce MWC's rights and has agreed to pay the firm a reasonable fee for its services.  MWC has incurred, and will

R012

continue to incur, reasonable attorney's fees, which it seeks to recover as damages from Defendants pursuant to Section 38.001 of the Texas Civil Practice and Remedies Code and Texas law.

## VI.
## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** MWC requests that Defendants be cited to appear and answer this Petition and that upon final hearing that MWC have judgment against Defendants, jointly and severally, as follows:

a. all actual damages;

b. all special damages as permitted by law;

c. exemplary damages as permitted by law;

d. disgorgement of all profits obtained by Defendants as permitted by law;

e. pre-judgment interest at the highest rate permitted by Texas law;

f. post-judgment interest at the highest rate permitted by Texas law;

g. reasonable and necessary attorneys' fees for pre-trial, trial, any and all appeals, and petitions for review;

h. all costs of suit; and

i. all other relief to which MWC may be entitled in law or equity.

R013

Respectfully submitted,

**BELL, NUNNALLY & MARTIN LLP**

By: _____

Christopher B. Trowbridge
ctrowbridge@bellnunnally.com
Texas Bar No. 24008182
R. Heath Cheek
Texas Bar No. 24053141
hcheek@bellnunnally.com
Gregory D. Kelminson
State Bar No. 24070045
gkelminson@bellnunnally.com

3232 McKinney Avenue, Suite 1400
Dallas, Texas 75204-2429
Telephone: (214) 740-1400
Telecopy: (214) 740-1499

**ATTORNEYS FOR PLAINTIFF
MIDWESTERN CATTLE MARKETING, LLC.**

2220269_1.doc

# Appendix C

| | | |
|---|---|---|
| MIDWESTERN CATTLE MARKETING, LLC | § § § | IN THE DISTRICT COURT |
| Plaintiff | § § | |
| | § | |
| vs. | § § | |
| | § | |
| TONY E. LYON d/b/a LYON FARMS, OWEN LYON and MONNA LYON | § § § | |
| | § | JACK COUNTY, TEXAS |
| Defendant | § § | |
| and | § § | |
| | § | |
| NORTHWEST CATTLE FEEDERS, L.L.C. and RILEY LIVESTOCK, INC. | § § § | |
| | § | |
| Intervenors | § | 271ST JUDICIAL DISTRICT |

## FIRST AMENDED PETITION IN INTERVENTION

TO THE HONORABLE JUDGE OF THE COURT:

Northwest Cattle Feeders, LLC and Riley Livestock, Inc. (hereinafter collectively "Intervenors") file this First Amended Petition in Intervention, and in support of same would respectfully show as follows:

### 1.0 Discovery Level

1.1 Pursuant to TRCP 190.1, Intervenors respectfully requests that discovery in this case be conducted under Level 3 by further order of this Court, as set forth in TRCP 190.4.

### 2.0 Grounds for Intervention

2.1 Midwestern Cattle Marketing, LLC (hereinafter Midwestern Cattle) filed the present lawsuit against Defendants Tony E. Lyon d/b/a Lyon Farms, Owen Lyon and Monna Lyon for what it calls a "deplorable scheme" by its agent to defraud others.

FIRST AMENDED PETITION IN INTERVENTION – PAGE 1

Intervenors are victims of that scheme committed by Midwestern Cattle's agent. In addition, Midwestern Cattle retained the benefits of the fraudulent scheme committed by its agent. As such, Midwestern Cattle is liable and responsible for the harm caused by its agents in defrauding Intervenors.

2.2     This litigation arises out of a scheme perpetuated by Tony E. Lyon to defraud purchases of cattle. Intervenors were purchasers victimized by this fraudulent scheme. Lyon committed this scheme while acting as an agent for Midwestern Cattle. Midwestern Cattle also alleges that Owen Lyon and Monna Lyon were also participants in the scheme involving the alleged purchase and sell of cattle.

2.3     On or about July 6, 2015, Midwestern Cattle filed this suit against Tony E. Lyon d/b/a Lyon Farms, Owen Lyon and Monna Lyon (hereafter sometimes collectively referred to as "Defendants") seeking damages arising from Lyon's conduct as Midwestern Cattle's agent.

2.4     As set forth below, Intervenors are entitled to recover legal and equitable relief against Midwestern Cattle and Defendants. As such, Intervenors have a justiciable interest in this suit, and are proper parties to the present suit. Intervention will not unnecessarily or unreasonably complicate the case by an excessive multiplication of issues, and is essential to protect Intervenors' interest.

2.5     Intervenors claims will be affected by resolution of the present case. Among other things, the resolution of Intervenors claims will be affected by resolution of the pending case because the same scheme by the same parties that victimized Intervenors is alleged by Plaintiff. Moreover, there is a joint interest in the cattle Plaintiff seized from Defendants, or proceeds from sale of that cattle.

R041

2.6    Intervenors, in their own right, are entitled to assert the causes of action set forth herein. Intervenors, in their own right, were entitled to assert this action in their own name against Plaintiff and Defendants, and any cross-claims or counterclaims between Plaintiff and Defendants would be properly before the Court in that suit.

2.7    Intervention will not unduly complicate or confuse any of the issues in this case. To the contrary, there is substantial overlap between the issues raised by Plaintiff's claims and the issues raised by Intervenors' claims, and such claims are interwoven and arise from the same operative set of facts – namely the same cattle fraud scheme.

2.8    Adjudication and disposition of this case without intervention could reasonably impair or impede Intervenors' ability to protect their interest in recovering damages incurred as a result of the cattle fraud scheme, and in recovering whatever interest Intervenors held in the cattle Plaintiff seized from Defendants before filing suit.

## 3.0    Venue

3.1    Venue is proper in Jack County for the claims asserted by Northwest Cattle Feeders pursuant to Texas Civil Practice & Remedies Code §15.002(a)(2) because one or more parties are residents of Jack County, Texas. Additionally, venue is proper under Texas Civil Practice & Remedies Code §15.002(a)(1) because a substantial part of the acts and omissions giving rise to Intervenors' claims occurred in Jack County, Texas. Venue is also proper in Jack County, Texas under Texas Civil Practice & Remedies Code §15.062.

3.2    Venue is proper in Wise County for the claims asserted by Riley Livestock, Inc. pursuant to Texas Civil Practice & Remedies Code §15.002(a)(2) because Lyon Defendants are residents of Jack County, Texas. Additionally, venue is proper under Texas Civil Practice & Remedies Code §15.002(a)(1) because a substantial part of the

R042

acts and omissions giving rise to Intervenors' claims occurred in Jack County, Texas. Venue is also proper in Jack County, Texas under Texas Civil Practice & Remedies Code §15.062.

## 4.0 Factual Background

4.1 Midwestern Cattle admits that it acts as cattle brokers. Midwestern Cattle buys cattle from a seller and then sells the cattle to a buyer. Intervenors operate a feed lot and otherwise trade in cattle. Prior to 2015, Intervenors were introduced by Jason O'Connell of Midwestern Cattle to Tony Lyon d/b/a Lyon Farms (hereinafter "Lyon"). Lyon was represented to Intervenors to be a cattle order buyer for Midwestern Cattle operating in Texas. From that introduction, a business relationship developed between Intervenors and Midwestern Cattle (through its agent Tony Lyon) for the purchase and sale of cattle.

4.2 In March 2015, after multiple transactions that appeared to be successful, Intervenors entered into an agreement with Midwestern Cattle through Lyon to purchase 554 head of cattle. Before entering into this agreement, Jeff Cox (on behalf of Intervenors) met with Lyon in Jack County to discuss the purchase. Lyon represented that cattle in a pasture he showed Cox were the 554 head of cattle Intervenors were purchasing. At all times relevant herein in his dealings with Cox (on behalf of Intervenors), Lyon was acting as an agent and representative of Midwestern Cattle.

4.3 Midwestern Cattle admits that Tony Lyon was its agent. Midwestern Cattle provided Tony Lyon with a Midwestern Cattle checkbook and signature stamp enabling him to conduct the business of Midwestern Cattle. This permitted Lyon to buy and sell cattle on a "float" basis. At no time did Midwestern Cattle investigate Lyon's background to determine whether he was fit for such authority to act on behalf of Midwestern Cattle.

R043

4.4     After Intervenors agreed to purchase the cattle in question, Midwestern Cattle sent an invoice to Intervenors dated March 31, 2015. The recipient of the invoice was Northwest Cattle Feeders, LLC. The amount of the invoice was $798,351.19. The invoice was specifically for 554 head of cattle with the description "Steers sold from Perrin, TX." This invoice relates to the specific cattle Cox discussed with Lyon in Jack County.

4.5     Upon receipt of the invoice, Riley Livestock, Inc. wrote a check dated March 31, 2015 in the amount of $798,319.08. This check was made payable to Midwestern Cattle. At the request of Midwestern Cattle, the check was delivered Points West Community Bank for deposit into Midwestern Cattle's bank account. Midwestern specifically attested that the "livestock referenced by this document or other communications specific to the transaction and transferred are of US origin (born & raised)."

4.6     After receiving and depositing the check, Intervenors never saw the cattle. The cattle were to be delivered to Francis Farms for feeding and delivery for sale 60-90 days later. However, when it came time to sell the 554 head of cattle, Midwestern Cattle failed to deliver the 554 head of cattle to Intervenors.

4.7     Midwestern Cattle paid itself a commission of $5,335.10 for the sale of the 554 head of cattle. Midwestern Cattle received and retained this commission despite failing to deliver the cattle.

4.8     To date, Midwestern Cattle and its agent (Tony Lyon) have failed to deliver the 554 head of cattle to Intervenors. To date, Midwestern Cattle and its agent (Tony Lyon) have failed to return the $798,319.08 that Intervenors paid.

FIRST AMENDED PETITION IN INTERVENTION – PAGE 5

R044

4.9     In June 2015, shortly before time for the cattle to be sold, Midwestern Cattle informed Jeff Cox that there was "a problem" with Lyon. At no time before this conversation did Midwestern Cattle ever indicate any problems with Lyon or his operations on behalf of Midwestern Cattle in Texas.

4.10    Jeff Cox travelled to Texas to speak with Tony Lyon. When he arrived, Cox learned that other Midwestern Cattle representatives (Jason O'Connell and Tim Correll) had been present on the Lyon property. Midwestern Cattle seized approximately 892 head of cattle from Lyon Farms, and represented to Cox that the seized cattle would be used to try to "make whole" both Cox and Midwestern Cattle.

4.11    Later in 2015, 41 head of cattle were delivered to Intervenors' business location in Nebraska. These head of cattle were represented to be from the seized cattle. Intervenors liquidated the 41 head and had checks for the proceeds made out jointly to Midwestern Cattle and Northwest Cattle Feeders.

4.12    Midwestern Cattle has not disclosed what happened with the remaining seized cattle despite requests by Intervenors for this information, Upon information and belief, Midwestern Cattle has liquidated some or all of the seized cattle and retained the proceeds from those sales for its use to the exclusion of Intervenors.

## 5.0     Conditions Precedent

5.1     With respect to Intervenors' claims, all conditions precedent have been performed or have occurred. TRCP 54.

## 6.0     Constructive Trust and Accounting

6.1     Intervenors are entitled to a constructive trust over cattle or proceeds from the sale of cattle seized by Plaintiff or on behalf of Plaintiff.

R045

6.2 A constructive trust is appropriate because of the actual fraud or constructive fraud committed by Plaintiff and Defendants.

6.3 Plaintiff would be unjustly enriched by retaining benefits from the cattle seized or sold. Specifically, upon information and belief, Plaintiff took possession of 892 head of cattle to its exclusive possession, sold the cattle, and retained the proceeds from such sale to the exclusion of Intervenors.

6.4 A constructive trust over any and all cattle, proceeds from the sale of seized cattle, or other funds recovered by Plaintiff from others as a result of the wrongful conduct of its agent is appropriate and necessary to prevent unjust enrichment by Plaintiff.

6.5 Intervenors also seek an accounting for the seized cattle or any proceeds from the sale of the seized cattle.

## 7.0 Cause of Action for Breach of Contract

7.1 Intervenors incorporate the allegations contained in Section 4 above as if fully set forth herein.

7.2 The agreement between Midwestern Cattle and Intervenors to purchase 554 head of cattle was a contract. The contract is evidenced in writing by the invoice dated March 31, 2015.

7.3 Intervenors performed by tendering payment of the amount set forth in the invoice.

7.4 Midwestern Cattle failed to perform by (a) failing to deliver the 554 head of cattle. At time of sale, the 554 head of cattle were not available for Intervenors to sell; or (b) failing to return the funds paid by Intervenors when it became clear to Midwestern Cattle that the 554 head were not delivered to Intervenors to be resold.

R046

7.5     Midwestern Cattle breached its contractual obligation by failing to provide the 554 head of cattle after Intervenors made payment; and by failing to return the funds paid by Intervenors when it became clear the 554 head of cattle were not delivered to Intervenors to be resold.

7.6     This is a breach of contract and has resulted in damages to Intervenors more fully set forth below.

## 8.0    Cause of Action for Fraud (Misrepresentation)

8.1     Intervenors incorporate the allegations contained in Section 4 above as if fully set forth herein.  Based on the foregoing allegations, Intervenors assert claims for fraud by misrepresentation against Tony Lyon.  This claim includes a claim of fraud in the inducement that induced Intervenors to enter into the agreement to purchase the 554 head of cattle.

8.2     Tony E. Lyon d/b/a Lyon Farms ("Lyon"), as Midwestern Cattle's agent, made representations that were false and material that he knew were false or made recklessly without knowledge of its truth. The false representations include a representation that Intervenors would receive the cattle shown to Jeff Cox in March 2015 and invoiced by Midwestern Cattle on March 31, 2015, and that the 554 head of cattle identified in the March 31, 2015 invoice would be delivered and available to be resold by Intervenors after the feeding and grazing period.

8.3     Lyon, as Midwestern Cattle's agent, made these representations with the intent that Intervenors act upon them by sending the check for $798,319.08 for the purchase of the 554 head of cattle to Midwestern Cattle.  Intervenors relied upon those false representations by writing the check and sending it to Midwestern Cattle Marketing, LLC for the 554 head of cattle.

FIRST AMENDED PETITION IN INTERVENTION – PAGE 8

R047

8.4     These representations caused injury to Intervenors and were a proximate cause of damages to Intervenors more fully set forth below.

8.5     Midwestern Cattle is liable for the fraud by misrepresentation and fraudulent inducement committed by Lyon because at all times relevant Lyon was acting as Midwestern Cattle's agent or otherwise aided and abetted such conduct as set forth in Section 14 below. To the extent necessary, Intervenors invoke the doctrine set forth in Restatement (Second) of Torts §876. Midwestern Cattle is also liable for the fraud by misrepresentation and fraudulent inducement committed by Lyon under the doctrine of ratification as set forth in Section 16 below.

8.6     Owen Lyon and Monna Lyon knowingly aided and abetted Lyon's fraud (including fraudulent inducement). As such, Owen Lyon and Monna Lyon are jointly and severally liable to Intervenors for the harm resulting from this fraud. To the extent necessary, Intervenors invoke the doctrine set forth in Restatement (Second) of Torts §876.

8.7     Intervenors are entitled to recover damages more fully set forth below.

## 9.0    Cause of Action for Fraud (Non-Disclosure)

9.1     Intervenors assert claims against Midwestern Cattle and Tony E. Lyon d/b/a Lyon Farm ("Lyon") for fraud by non-disclosure. This claim includes a claim of fraud in the inducement that induced Intervenors to enter into the agreement to purchase the 554 head of cattle.

9.2     Midwestern Cattle and Lyon concealed from and failed to disclose certain material facts to Intervenors that Midwestern Cattle and Lyon had a duty to disclose. The information concealed includes the fact that Lyon was given access to the Midwestern Cattle checkbook to write checks on behalf of Midwestern Cattle to himself

R048

or his business interest or his family without any supervision or review by others at Midwestern Cattle; and the fact that Midwestern Cattle and Defendants were operating the cattle sales on a "float" that did not involve sales of existing cattle or actual sellers as represented. In addition, Midwestern Cattle and Lyon never disclosed prior criminal convictions of Tony Lyon related to his cattle business operations.

9.3     Midwestern Cattle and Lyon knew Intervenors did not know these facts and did not have an equal opportunity to discover those facts.

9.4     Midwestern Cattle and Lyon remained deliberately silent when they had a duty to speak.  By remaining silent, Midwestern Cattle and Lyon intended to induce Intervenors to pay for the 554 head of cattle they never received.  For example, Midwestern Cattle had a duty to disclose this information in response to inquiry by Jeff Cox in December 2014 concerning the business practices of Tony Lyon. Instead, Midwestern Cattle representatives stated that there was nothing improper about the business practices of Tony Lyon.

9.5     Intervenors relied on the non-disclosure of these facts by Midwestern Cattle and Lyon and sustained injury as a result of this non-disclosure.

9.6     Midwestern Cattle is liable for the fraud by non-disclosure and fraudulent inducement committed by Lyon because at all times relevant Lyon was acting as Midwestern Cattle's agent or otherwise aided and abetted such conduct as set forth in Section 14 below. To the extent necessary, Intervenors invoke the doctrine set forth in Restatement (Second) of Torts §876. Midwestern Cattle is also liable for the fraud by non-disclosure and fraudulent inducement committed by Lyon under the doctrine of ratification as set forth in Section 16 below.

R049

9.7    Owen Lyon and Monna Lyon knowingly aided and abetted Lyon's fraud (including fraudulent inducement). As such, Owen Lyon and Monna Lyon are jointly and severally liable to Intervenors for the harm resulting from this fraud. To the extent necessary, Intervenors invoke the doctrine set forth in Restatement (Second) of Torts §876.

9.8    Intervenors are entitled to recover damages more fully set forth below,.

## 10.0  Cause of Action for Money Had and Received

10.1    Intervenors assert claims against Midwestern Cattle and Defendants for money had and received.

10.2    As set forth above, Intervenors paid $798,351.19, which included a $5,335.10 commission for 554 head of cattle. These funds were received and deposited by Midwestern Cattle. The 554 head of cattle was never delivered for resale.

10.3    As a result, Midwestern Cattle and Defendants hold funds that in equity and good conscience belong to Intervenors, and Intervenors are entitled to recover from Midwestern Cattle and Defendants for money had and received.

10.4    Intervenors are entitled to damages in the amount of funds had and received by Midwestern Cattle and Defendants that in equity and good conscience belong to Intervenors.

## 11.0  Conversion

11.1    Upon information and belief, the 554 head of cattle (if they ever existed) were in the possession of the Lyon Defendants. At some point, upon information and belief, Plaintiff seized approximately 892 head of cattle from the Lyon Defendants.

R050

11.2    The 554 head of cattle (if they ever existed) are the rightful property of Intervenors by virtue of Intervenors' payment of the invoice received from Midwestern Cattle on March 31, 2015. The 554 head of cattle were personal property.

11.3    To the extent some or all of the 554 head of cattle Intervenors paid for were among the 892 head of cattle seized by Plaintiff from the Lyon Defendants, Intervenors assert an action for conversion against Plaintiff. By seizing the cattle from the Lyon Defendants and/or selling the cattle after seizure, Plaintiff wrongfully exercised dominion or control over the cattle.

11.4    To the extent some or none of the 554 head of cattle Intervenors paid for were not among the 892 head of cattle seized by Plaintiff from the Lyon Defendants, Intervenors assert an action for conversion against Tony Lyon d/b/a Lyon Farms. Tony Lyon d/b/a Lyon Farms wrongfully exercised dominion or control over the cattle by retaining the cattle and/or selling the cattle prior to seizure by Plaintiff.

11.5    Plaintiff is liable for any acts of conversion by Tony Lyon d/b/a Lyon Farms for the reasons set forth in Section 15 below.

11.6    Owen Lyon and Monna Lyon are liable for any acts of conversion by Tony Lyon d/b/a Lyon Farms for aiding and abetting such conduct.

11.7    Intervenors suffered injury from the conversion of the 554 head of cattle. Intervenors are entitled to damages in the form of a return of the cattle, the proceeds received from the sale of such cattle, or damages as more fully set forth below.

## 12.0  Damages

12.1    As a result of the acts and omissions set forth above, Intervenors have sustained actual damages.  These damages include direct damages and consequential damages resulting from wrongful conduct by Midwestern Cattle and Defendants

R051

12.2 The acts and omissions more fully described above by Intervenors, singularly or in combination thereof, have been a direct, proximate and/or producing cause of damages to Intervenors in an amount that exceeds the jurisdictional limits of this Court. The damages sustained by Intervenors are general and specific, as well as direct and consequential. Intervenors' damages include, but are not limited to, out-of-pocket losses, benefit of the bargain losses, loss of use damages, lost opportunity damages, lost profits, and all other losses reasonably flowing from the conduct of Intervenors.

12.3 Intervenors are entitled to recover reasonable and necessary attorney fees pursuant to Texas Civil Practice & Remedies Code §38.001.

12.4 Intervenors are entitled to pre-judgment and post-judgment interest at the highest rate allowed by law. Intervenors are also entitled to recover all costs of court.

12.5 Intervenors are also entitled to equitable relief in the form of a constructive trust and/or an accounting pertaining to the cattle seized by Midwestern Cattle from Defendants.

## 13.0 Exemplary Damages

13.1 The acts and omissions of Tony Lyon more fully set forth above evidence a specific intent to enrich himself by causing substantial harm to Intervenors. As such, the imposition of exemplary damages in a sufficient amount to be determined by the jury against Tony Lyon is warranted to make an example of Tony Lyon and to deter others from engaging in similar conduct.

13.2 Midwestern Cattle is liable for exemplary damages based on the wrongful conduct of its agent (Tony Lyon). Tony Lyon had a prior history of fraudulent conduct with respect to cattle sales. Tony Lyon was unfit to serve as the agent for Midwestern

R052

Cattle in the role and with the responsibilities Midwestern Cattle bestowed upon him. Midwestern Cattle was reckless in employing Tony Lyon in that capacity. Additionally and alternatively, Midwestern Cattle ratified or approved the acts of Tony Lyon with respect to the specific sale made to Intervenors. Among other things, Midwestern Cattle retained the commission charged with respect to that sale.

13.3    Midwestern Cattle is also liable for exemplary damages for the wrongful conduct of Tony Lyon under Texas Civil Practice & Remedies Code §41.005(c).

13.4    The statutory cap on exemplary damages does not apply in this case pursuant to Texas Civil Practice & Remedies Code §41.008(c)(9); §41.008(c)(11), or §41.008(c)(13).

## 14.0    Midwestern Cattle is liable for the wrongful conduct of Tony Lyon

14.1    Midwestern Cattle is liable for the wrongful conduct of Tony Lyon d/b/a Lyon Farms ("Lyon") under the doctrine of agency or apparent authority. Midwestern Cattle admitted and recognized that Lyon was their agent. Midwestern Cattle provided Tony Lyon with actual or apparent authority to act as its agent by providing Lyon with a Midwestern Cattle checkbook and signature stamp to conduct Midwestern Cattle business. Midwestern Cattle affirmatively represented Lyon to be its representative to Intervenors. He was Midwestern Cattle's order buyer and part of their group in Texas. Midwestern Cattle clothed Lyon with authority and ability to buy and sell cattle on Midwestern Cattle's behalf with no oversight.

14.2    Alternatively, Midwestern Cattle is liable for the wrongful conduct of Lyon under the doctrine of apparent authority because it took affirmative steps to clothe Lyon with authority to act on its behalf, and Intervenors relied on those acts in dealing with Lyon as an agent of Midwestern Cattle.

R053

14.3  Midwestern Cattle is jointly and severally liable for the damages caused by Lyon's fraud by misrepresentation (including fraudulent inducement) for aiding and abetting such conduct set forth in Section 8 above.

14.4  Midwestern Cattle is jointly and severally liable for the damages caused by Lyon's fraud by non-disclosure (including fraudulent inducement) for aiding and abetting such conduct set forth in Section 9 above.

## 15.0  Civil Conspiracy

15.1  Intervenors assert that Tony Lyon d/b/a Lyon Farms; Owen Lyon; and Monna Lyon engaged in a civil conspiracy to defraud Intervenors.

15.2  The members of the conspiracy included Tony Lyon d/b/a Lyon Farms; Owen Lyon; and Monna Lyon.

15.3  The object of the conspiracy was to induce Intervenors to pay for cattle that they would never receive.

15.4  The members of the conspiracy had a meeting of the minds on the object or course of action, and one or more members committed an unlawful overt act to further the object or course of action as more fully set forth above.

15.5  Intervenors suffered injury and sustained damages based upon this conduct.

## 16.0  Ratification

16.1  Midwestern Cattle is also liable for the acts and omissions of Tony Lyon d/b/a Lyon Farms ("Lyon") under the doctrine of Ratification.

16.2  As set forth above, Lyon was an agent for Midwestern Cattle. Intervenors entered into a transaction with this agent. Midwestern Cattle approved by word, act or conduct after acquiring full knowledge of the act that gave validity to their acts including

R054

but not limited to allowing Lyon to solicit funds for the 554 head of cattle and taking a commission for cattle that were never provided to Intervenors.

16.3    Even after admitting full knowledge of the fraudulent conduct committed by Tony Lyon, Midwestern Cattle retained the benefits of the transaction involving the 554 head of cattle and, as such, ratified the transaction.

## 17.0    Demand for Jury

17.1    Intervenors demand their right to a jury trial afforded by the Texas Constitution and the United States Constitution. Intervenors have previously tendered the requisite fee to the district clerk.

WHEREFORE, Intervenors requests that Midwestern Cattle and Lyon Defendants be cited to appear and answer, and that on final trial Intervenors have:

(a)    Judgment against Midwestern Cattle Marketing, LLC, Tony E. Lyon d/b/a Lyon Farms, Owen Lyon and Monna Lyon for actual and compensatory damages in an amount in excess of the minimum jurisdictional limits of the Court more fully set forth above;

(b)    Judgment against Midwestern Cattle Marketing, LLC, Tony E. Lyon d/b/a Lyon Farms, Owen Lyon and Monna Lyon for exemplary damages as set forth above;

(c)    A constructive trust over cattle Plaintiff seized from Lyon Farms in 2015 or proceeds from the sale of cattle seized from Lyon Farms by Plaintiff;

(d)    An accounting for the cattle Plaintiff seized from Lyon Farms in 2015 or proceeds from the sale of cattle seized from Lyon Farms by Plaintiff;

(e)    Reasonable and necessary attorney fees as set forth above;

(f)    Pre-judgment interest and post-judgment interest at the highest rates allowed by law; and

(g)    Costs of suit; and

(h)    Such other and further relief to which Intervenors may be justly entitled.

R055

Respectfully submitted,

SIMPSON, BOYD, POWERS & WILLIAMSON

Derrick S. Boyd
State Bar No. 00790350
Michael A. Simpson
State Bar No. 18403650
Kristy P. Campbell
State Bar No. 24041684
P.O. Box 957
105 N. State Street, Suite B
Decatur, Texas 76234
Telephone No. (940) 627-8308
Facsimile No. (940) 627-8092

BY: _____

ATTORNEYS FOR INTERVENORS

## CERTIFICATE OF SERVICE

By my signature above, I hereby certify that a true and correct copy of Intervenor's First Amended Petition in Intervention was delivered via fax and/or certified mail return receipt requested to all counsel of record on this 26th day of February, 2016.

R056

# Appendix D

# TEXAS RULES OF CIVIL PROCEDURE

### Rule 60.   Intervenor's Pleadings

Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party.

Oct. 29, 1940, eff. Sept. 1, 1941.  Amended by order of April 24, 1990, eff. Sept. 1, 1990.

# Appendix E

# TEXAS RULES OF EVIDENCE

## Rule 404. Character Evidence; Crimes or Other Acts

**(a) Character Evidence.**

**(1)** *Prohibited Uses.* Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.

**(2)** *Exceptions for an Accused.*

**(A)** In a criminal case, a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it.

**(B)** In a civil case, a party accused of conduct involving moral turpitude may offer evidence of the party's pertinent trait, and if the evidence is admitted, the accusing party may offer evidence to rebut it.

**(3)** *Exceptions for a Victim.*

**(A)** In a criminal case, subject to the limitations in Rule 412, a defendant may offer evidence of a victim's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it.

**(B)** In a homicide case, the prosecutor may offer evidence of the victim's trait of peacefulness to rebut evidence that the victim was the first aggressor.

**(C)** In a civil case, a party accused of assaultive conduct may offer evidence of the victim's trait of violence to prove self-defense, and if the evidence is admitted, the accusing party may offer evidence of the victim's trait of peacefulness.

**(4)** *Exceptions for a Witness.* Evidence of a witness's character may be admitted under Rules 607, 608, and 609.

**(5)** *Definition of "Victim."* In this rule, "victim" includes an alleged victim.

**(b) Crimes, Wrongs, or Other Acts.**

**(1)** *Prohibited Uses.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

**(2)** *Permitted Uses; Notice in Criminal Case.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce such evidence—other than that arising in the same transaction—in its case-in-chief.

Eff. March 1, 1998. Amended by orders of Supreme Court March 10, 2015 and Court of Criminal Appeals March 12, 2015, eff. April 1, 2015.